# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

Ryan Ray Corman, )
)
           Plaintiff, )
)
           vs. )
)
Wayne Stenehjem, North Dakota State )
Attorney General, Jonathan Byers, Assistant )
State Attorney General, Ken Sorenson, )
Assistant State Attorney General, Carmell )
Mattison, State's Atty, Northeast Judicial )
District, Kristi Pettit, State's Atty, Northeast )
Judicial District, Les "Barney" Tomanek, )
Supervisor, ND Dept. Of Corrections, )
Probation, Loralyn Waltz, Probation Agent, )
NDDOCR P&P, Wade Price, Probation )
Agent, Chad Torgeson, Probation Agent, )
Don Redmann, Warden, James River )
Correctional Center, Grand Forks Police )
Department, William "Bill" Macki, SGT., )
GFPD, Jim Vigness, Detective, GFPD, )
Officer Kalinnen, first name unknown, )
Officer Johnston, first name unknown, Dr. )
Donald Newberry, Contract Psychological )
'Evaluator,' North Dakota Dept. of )
Corrections and Rehabilitation, CPC Rule, )
Inc., Contract 'program' provider, Tim )
Sinn, Supervisor and Agent, CPC Rule, )
Inc., Terry DeMars, Contract 'Counselor,' )
Employee CPC Rule, Inc., Lacey Anderson, )
'Human Resource Counselor,' NDDOCR, )
JRCC, Northeast Human Services Center, )
Grand Forks, ND, Peter Welte, State's )
Attorney, Northeast Judicial District, )
Barbara Brieland, Julie Munkeby, and )
Orie Oksendahl, )
)
           Defendants. )

Case No. 3:12-cv-53

**REPORT AND RECOMMENDATION
AND ORDER**

Plaintiff Ryan Ray Corman ("Corman"), who is proceeding *in forma pauperis* and *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 (Doc. #17) and an addendum to the complaint (Doc. #17-2).[1] Corman also filed a motion for a federal investigation (Doc. #6), a motion for an emergency hearing (Doc. #7), two motions to amend the complaint to add additional defendants (Doc. #13, Doc. #31), and a motion to amend the complaint as to the relief sought (Doc. #32).

The court granted Corman's motions to add additional defendants and to amend the relief sought, and denied his motion for an emergency hearing. (Doc. #18, Doc. #34, Doc. #35). Corman then filed an amended motion for an emergency hearing. (Doc. #19). The court denied the amended motion, but stated it would consider Corman's claims within the amended motion in conjunction with his complaint. (Doc. #23).

## Summary

Corman's complaint mostly contains conclusory statements devoid of operative facts. He has failed to state a plausible claim which would entitle him to relief against any of the named defendants. Additionally, some of his claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), some of the defendants are immune from suit, and one of his claims is frivolous. It is **RECOMMENDED** that the complaint be **DISMISSED** with prejudice, and it is **ORDERED** that Corman's motion for a federal investigation is **DENIED**.

## Background

In 2008, a jury found Corman guilty of contributing to the delinquency or deprivation of a minor for providing a juvenile with pornographic materials, in violation of N.D. Cent. Code §

---

[1] Corman arranged his complaint by defendant rather than by claim. The Report and Recommendation and Order is written in the same format for the benefit of the plaintiff.

14-10-06.  <u>State v. Corman</u>, 2009 ND 85, 765 N.W.2d 530.  Corman was sentenced to one year imprisonment with six months suspended, and he was required to register as a sex offender.  <u>Id.</u> The North Dakota Supreme Court affirmed the conviction, finding there was sufficient evidence to support the jury's verdict, and that the district court did not err in requiring Corman to register as a sex offender.  <u>Id.</u>

In 2009, Corman was charged with failure to register as a sex offender.  <u>State v. Corman</u>, Grand Forks County, Case No. 18-07-K-01498.  Corman pled guilty and was sentenced to five years of imprisonment with two years suspended, and five years of probation.  <u>Id.</u>  Corman did not directly appeal the judgment of conviction.  <u>Id.</u>

When Corman filed the instant action he was incarcerated at the James River Correctional Center.  He is currently an involuntary patient at the North Dakota State Hospital pursuant to a state petition for civil commitment.  The court notes Corman currently has two petitions for habeas relief pending before this court relating to both of his convictions.

<b>Review of the Complaint</b>

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the court must conduct an initial review of the complaint prior to service upon the defendants.  28 U.S.C. § 1915A(a).  On initial review the court must identify cognizable claims or dismiss the complaint, or any part of it, that is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); <u>see also</u> 28 U.S.C. § 1915(e)(2).  An action is frivolous if "it lacks an arguable basis either in law or fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).  An action fails to state a claim if it does not plead "enough facts to state a

claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Branden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). There must be "more than the sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

The court must accept the plaintiff's factual allegations as true. Id. However, "some factual allegations may be so indeterminate that they require 'further factual enhancement' in order to state a claim." Branden, 588 F.3d at 594 (quoting Twombly, 550 U.S. at 557). The facts pled must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam)). To satisfy fair notice, a plaintiff must at minimum state the operative facts underlying the claim. Kyle v. Morton High School, 144 F.3d 448, 344 (7th Cir. 1998). "[M]ere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The PLRA complaint form provided by the court and used by Corman to file his action directs the prisoner as to each claim, "State here as briefly as possible the basis for your claim, including the facts of your case. You MUST state exactly what each defendant did, or failed to do, which resulted in harm to you. Include also the names of other persons involved (for example, other inmates) and state the date and place of all events." (Doc. #17) (emphasis in original).

To establish a claim under 42 U.S.C. § 1983, Corman must allege the defendants deprived him of a particular constitutional right, and that the defendants acted under color of

state law.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).  The court must liberally construe the allegations of Corman's *pro se* complaint, but the complaint must still contain specific facts supporting its conclusions.  Kaylor v. Fields, 661 F.2d 1177, 1182-83 (8th Cir. 1981).  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir.1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.1982)).

## I.      State of North Dakota and State Agencies

Corman alleges the State of North Dakota and various state agencies "acted in collusion to deny the Plaintiff due process, equal protection and [a] fair hearing."  (Doc. #17, pp. 9, 19). Corman states that felony crimes and civil rights violations were committed against him, his complaints of wrongdoing were ignored, and he was defamed in the media.[2]  Id.  Corman contends the North Dakota Department of Corrections and Rehabilitation, in addition to the alleged activities above, encouraged retaliation, created false documents, presented false information to the state court, and stole Corman's property.  Id.  Finally, Corman alleges the Northeast Human Services Center assisted other defendants in providing false information to the state court, and maintains a false record relating to Corman.  Id. at 18.

Corman provides no specific facts underlying his claims.  This is a theme common throughout his entire complaint.  He does not state how his due process and equal protection rights were violated, what felony crimes and civil rights violations were committed against him,

---

[2]  The court notes that "claims for defamation and slander are not cognizable under § 1983."  Miner v. Brackney, 719 F.2d 954, 955 (8th Cir. 1983).  "[A] defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States."  Ellinburg v. Lucas, 518 F.2d 1196, 1997 (8th Cir. 1975) (citations omitted).

what his complaints of wrongdoing were, how he was defamed, what false information was maintained and presented to the court, how retaliation was encouraged against him, what documents were false and how they were false, or what property was stolen.  "[N]aked assertions" and "labels and conclusions" devoid of "further factual enhancement" do not state a claim upon which relief can be granted.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).

Finally, states enjoy immunity from suit in the federal courts under the Eleventh Amendment.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989).  It is well established that a state is immune from suit under 42 U.S.C. § 1983. Id.; Monroe v. Arkansas State University, 495 F.3d 591, 594 (8th Cir. 2007); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999) (citing Will, 491 U.S. at 64, 71) (a state and its agencies are not "persons" within the meaning of section 1983)).  A state's immunity also extends to state agencies and institutions as well to state employees who are sued in their official capacities for monetary damages.  Id.  The State of North Dakota has not waived its Eleventh Amendment immunity.  See N.D. Cent. Code § 32-12.2-10.  Corman is not entitled to relief from the state and its agencies.

## II.    Wayne Stenehjem

Corman alleges defendant Wayne Stenehjem, the North Dakota Attorney General, is responsible for the misconduct of the North Dakota State's Attorney's Office because of his lack of oversight and failure to respond to complaints.  (Doc. #17, p. 9).  Corman provides no operative facts underlying his claim.  He merely asserts a legal conclusion.

The court notes that § 1983 does not impose respondeat superior liability.  Bell v. Kan. City Police Dep't, 635 F.3d 346, 347 (8th Cir. 2011) (per curiam); cf. Andrews v. Fowler, 98

F.3d 1069, 1078 (supervisory liability under § 1983 may attach if supervisor received notice of a pattern of unconstitutional acts committed by subordinates, demonstrated deliberate indifference to or gave tacit authorization of the unconstitutional acts, failed to take sufficient remedial action, and such failure caused an injury). Corman does not state what complaints were ignored by Attorney General Wayne Stenehjem or the subject matter of those complaints. Corman has not stated a claim upon which relief can be granted as to Wayne Stenehjem.

## III. Jonathan Byers and Ken Sorenson

Corman alleges Jonathan Byers and Ken Sorenson, North Dakota Assistant Attorneys General, are liable because Byers used "false information" and "false instruments" to have Corman declared a high risk sex offender despite exculpatory evidence, and Sorenson failed to respond to criminal acts including theft and abuse of process by state agents and employees. (Doc. #17, p. 10). Corman only provides the court with legal conclusions and does not provide enough facts to state a plausible claim. Corman does not state what false information was used by Jonathan Byers or what exculpatory evidence was ignored, and he does not state any facts relating to the alleged theft and abuse of process.

## IV. Peter Welte, Carmell Mattison and Kristi Pettit

Corman alleges Peter Welte, Grand Forks County State's Attorney, and Carmell Mattison and Kristi Pettit,[3] Assistant State's Attorneys, maliciously prosecuted Corman for a "fictitious and manufactured crime" and presented false evidence to the court to conceal Corman's knowledge of criminal activity by the Grand Forks Narcotics Task Force. (Doc. #17, p. 10). Corman contends Welte and Mattison concealed and destroyed exculpatory evidence and

---

[3] The court notes that Kristi Pettit is actually a Grand Forks City Prosecutor.

"coerced perjury." Id. at 11. He alleges Mattison tampered with witnesses "by secluding herself with the defense witnesses immediately prior to . . . trial with the purpose of providing false and prejudicial information in order to unlawfully alter and influence witness testimony." Id. Corman states that Mattison, along with others, presented at the sentencing hearing and on direct appeal of Corman's conviction for contributing to the delinquency of a minor a false criminal history report in an effort to have Corman deemed a sex offender, and additionally they provided the false information to the public. Id. Finally, Corman alleges Pettit "assisted in the denial of the Plaintiff's right to counsel at trial . . . " and also elicited perjured testimony. Id.

Again, Corman does not state specific facts underlying his claims. He does not state what false evidence was presented to the court to conceal plaintiff's knowledge of alleged criminal activity, what exculpatory evidence was destroyed, how the defendants "coerced perjury" or what testimony was perjured, what false information was presented to defense witnesses and how it altered their testimony, how the criminal history report was false, or how Petit assisted in the denial of Corman's right to counsel. Corman has failed to state a claim upon which relief can be granted.

Alternatively, the majority of Corman's claims seek to challenge the validity of his conviction, and thus are barred by Heck v. Humphrey, 512 U.S. 477 (1994). If, in an action under 42 U.S.C. § 1983, "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction . . . the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487. Corman has not demonstrated that his conviction has been reversed on appeal or otherwise invalidated through proper channels of post-conviction relief. A decision granting Corman

relief on his claims alleging he was prosecuted for a "fictitious and manufactured crime," and the prosecution presented false evidence, coerced perjury, destroyed exculpatory evidence, tampered with witnesses and assisted with the denial of Corman's right to counsel would necessarily imply that his conviction is invalid, and those claims are barred by Heck.

Finally, the court notes prosecutors acting within the scope of prosecutorial duties are absolutely immune from lawsuits for damages brought pursuant to 42 U.S.C. § 1983. Imbler v. Pachtman, 424 U.S. 409, 424-28 (1976). This immunity extends to claims of malicious prosecution. Id. at 428. Welte, Mattison and Pettit were acting within the scope of their prosecutorial duties by initiating prosecution and presenting the state's case, and are immune from suit.

## V. Les "Barney" Tomanek, Loralyn Waltz, Wade Price and Chad Torgeson, Julie Munkeby and Barbara Brieland

Corman alleges Les "Barney" Tomanek, Director of North Dakota Parole and Probation Services, failed to adequately supervise probation officers, and failed to investigate and respond to complaints. (Doc. #17, p. 12). Corman does not state how Tomanek failed to supervise probation officers or to what complaints Tomanek did not respond. Corman's conclusory statements do not state a claim upon which relief can be granted.

Corman alleges Loralyn Waltz, probation officer, presented "false information and false instruments" to the court, state "evaluators," police, media, health care providers, plaintiff's employer, and plaintiff's landlord. Id. at 10-12. Additionally, he alleges Waltz forced plaintiff to undergo physical testing and treatment, distorted plaintiff's statements, threatened to sanction plaintiff for not recanting testimony, threatened plaintiff into "false admissions of misconduct,"

9

and concealed criminal activity of the Grand Forks Narcotics Task Force.  Id. at 12-13.  Finally, Corman states Waltz provided false information for a criminal history report and a pre-sentence investigation report.  Id.

The court presumes the criminal history and pre-sentence investigation reports are the "false instruments" to which Corman refers.  However, Corman does not state what information was false in either of the documents.  Corman does not state what physical testing and treatment he was forced to undergo by Waltz.  Corman was likely subject to a court order requiring him to comply with sex offender treatment, and generally as part of the treatment the offender has to admit responsibility for his behavior or be deemed as non-compliant with treatment.  The court's best guess is that the sex offender treatment requirement likely ordered by the court is the source of Corman's complaints that Waltz forced him to recant testimony and make "false admissions." Finally, Corman does not state what criminal activity Waltz allegedly concealed.  Corman has failed to state a plausible claim which would entitle him to relief.

Corman alleges Wade Price and Chad Torgeson, probation officers, searched plaintiff's workspace at the direction of Loralyn Waltz.  Corman alleges Price, Torgeson and Waltz stole plaintiff's property and did not provide a receipt for the property at the time of seizure, labeled plaintiff's property as "unlawful" or "contraband" when it was not, and later provided plaintiff with an inaccurate receipt of the seized property.  Id. at 12-14.  Additionally, Corman alleges Tomanek participated in concealing the theft of plaintiff's property and the "falsification of a receipt" by the probation officers, and prevented plaintiff from recovering his property.

Corman does not state when the search occurred or whether it was pursuant to a warrant, authorized as a condition of his release, or pursuant to something else.  He does not state what

property was seized that he deems as lawful property, he does not state what inaccuracies were on the receipt or itemized list of property seized, and he does not state how receiving the itemization at a later time caused him damages. Corman's "naked assertions" devoid of "further factual enhancement" do not state a claim upon which relief can be granted. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).

Corman states he had conversations with Julie Munkeby and Barbara Brieland, "acting in their official capacities" as employees of the North Dakota Department of Corrections, in which they used "false information" for "unlawful and unconstitutional sanctions, conditions and 'requirements' to be levied against the Plaintiff on release from incarceration." (Doc. #13, pp. 1-2; Doc. #14, pp. 2-3). Corman states that Brieland supervises Waltz, Price and Torgeson and has supported their "unethical actions" including the use of "unconstitutional physical testing," and has refused to review false information in his file. (Doc. #14, p. 2). Corman states that Munkeby also refused to correct false information in Corman's file, and has sanctioned Corman for his "refusal to recant sworn testimony." Id. at 3.

Corman does not provide facts as to the content of the false information. He does not state what allegedly unconstitutional sanctions have been imposed upon him or what physical testing he was forced to undergo. Corman has failed to state a claim upon which relief can be granted against Munkeby and Brieland.[4]

---

[4] The court notes Corman only sued Munkeby and Brieland in their official capacities, and a claim for monetary damages against them in their official capacities is barred. See Will, 491 U.S. at 64, 71. Corman sued the rest of the defendants, except Orie Oksendahl, in their individual and official capacities.

## VI.     Don Redmann

Corman alleges Don Redmann, Warden of the James River Correctional Center, prevented plaintiff from recovering "illegally seized property" and supported the sanctioning of plaintiff for failing to admit guilt.  (Doc. #17, p. 14).   Corman does not state any of the operative facts underlying his claims.  He does not state what property was seized or how Warden Redmann prevented him from recovering the property.  Again, as stated above, the court assumes Corman had to admit his behavior as part of court ordered sex offender treatment, and he likely would have been deemed noncompliant with treatment for failing to comply with the requirement.  However, the court can only guess because Corman provided no facts.  He does not state why he was required to admit guilt or how he was sanctioned for failing to do so. Corman has failed to state a claim against Don Redmann upon which relief can be granted.

## VII.     Grand Forks Police Department

Corman alleges the Grand Forks Police Department acted in collusion with others to deny him "due process, equal protection and [a] fair hearing."  (Doc. #17, p. 1).  He states that felony crimes and civil rights violations were committed against him and his complaints of wrongdoing were ignored by the Police Department.  Id.  Corman alleges the Police Department "supported, condoned and encouraged" terroristic threats and assault and battery against the plaintiff, and the Police Department refused to investigate his complaints. Id. at 15.  Corman states one complaint that was ignored by the Police Department was in regard to an investigation where controlled substances were given to a minor as part of the investigation.  Id.  Finally, Corman alleges officers committed perjury.

Corman does not state how his due process and equal protection rights were violated. He does not provide any facts demonstrating how the Grand Forks Police Department "supported, condoned and encouraged" crimes to be committed against the plaintiff, beyond stating that they failed to investigate his complaints. He does not state when the crimes were allegedly committed against him, who they were allegedly committed by, or to whom within the Police Department he reported the crimes.[5] He does not state how a drug investigation has anything to do with him, although he later states in his complaint that reporting the drug activity is what led to the charge of contributing to the delinquency of a minor being filed against him. Corman also does not state which officers committed perjury or how they committed perjury.[6]

When a plaintiff is seeking to impose section 1983 liability on municipality or local government body, the plaintiff must show an official policy or a widespread custom or practice of unconstitutional conduct caused the deprivation of a constitutional right. Marksmeier v. Davie, 622 F.3d 896, 902 (8th Cir. 2010) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978)). Corman failed to allege any facts supporting that the Grand Forks Police Department has any official policy or widespread custom of encouraging crime, refusing to investigate complaints, or promoting perjury by its officers. Corman has failed to state a claim against the Grand Forks Police Department.

---

[5] Corman alleges at one point in his complaint he reported crimes to Officer Kalinnen. Corman's specific complaints against Officer Kalinnen will be addressed below.

[6] Corman alleges in his claims against Sergeant William Macki of the Grand Forks Police Department that he committed perjury. Corman's claims against Macki will be discussed below.

**VIII. William "Bill" Macki**

Corman alleges Sergeant William "Bill" Macki, employed by the Grand Forks Police Department, along with others "fabricated a crime," committed perjury, "swore to an 'investigation' that never took place," concealed and destroyed exculpatory evidence, "tainted testimony" of state witnesses, "tendered false instruments," presented false information "concerning his phone contact with plaintiff," and "coerced" a minor to commit perjury and "abuse of process." (Doc. #17, pp. 11, 15). Corman does not state how Macki "fabricated a crime" against him, how he committed perjury, what exculpatory evidence was concealed and destroyed, how he "tainted testimony," what false instruments were tendered or how they were misleading, what false information was presented, how Macki "coerced" a minor or how the minor committed perjury or committed "abuse of process," and Corman provides no facts relating to his claim that Macki "swore to an 'investigation' that never took place." Corman has failed to state a claim. Alternatively, to the extent that Corman's claims challenge the validity of his conviction, they are barred by <u>Heck</u>.

**IX. Jim Vigness**

In Corman's complaint he states that Jim Vigness, a Detective with the Grand Forks Police Department, violated a "lawful order by a lawfully sitting judge," "placed his hands upon the Plaintiff's face and head," and used "physical force," intimidation and threats to "remove a physical sample from the demonstrably unwilling Plaintiff." (Doc. #17, p. 16). Corman does not state what the court's order was or how it was violated. Corman does not state what sample was taken, although the court suspects it was DNA. Corman states he was unwilling to provide the sample, but he does not state that he had a right to refuse and he does not state that the force

14

used to collect the sample was excessive.  Corman has failed to state a claim upon which relief can be granted.

**X.     Officer Kalinnen and Officer Johnston**

Corman states that Officer Johnston called the plaintiff "late at night" on one occasion and threatened to come to Corman's home and "take care of" plaintiff if Corman did not stop making complaints against the Grand Forks Police Department, a task force and a confidential informant.  Id.  Corman contends he reported the incident to Officer Kalinnen, who allegedly failed to investigate.  Id.  Corman also states he made complaints against other officers employed by the Grand Forks Police Department to Officer Kalinnen, but Officer Kalinnen "concealed and destroyed all evidence of Plaintiff's lawful contact" and failed to return Corman's messages.  Id.

With regard to Officer Johnston calling Corman on the telephone, general harassment and verbal harassment are not actionable under § 1983.  McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993).  However, retaliating against a plaintiff for exercising his First Amendment rights is actionable.  In order to prevail on a claim for retaliation, Corman must prove, among other things, that the action taken against him would chill a person of ordinary firmness from engaging in protected activity.  Naucke v. City of Park Hills, 284 F.3d 923, 927-28 (8th Cir.2002).

"The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment."  Garcia v. City of Trenton, 348 F.3d 726, 728 (8th Cir.2003).  Though the standard is an objective one, it is of some significance that Corman was not deterred from making complaints of alleged police misconduct.  See Id. at 729.  Officer Johnson did not continue to call Corman and took no other affirmative steps after Corman did not heed his

warning. The court finds that one harassing phone call containing a non-specific threat would not chill a person of ordinary firmness from reporting alleged police misconduct. See Naucke, 284 F.3d at 928 (observing that "it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise" (citations and quotations omitted)); Carroll v. Pfeffer, 262 F.3d 847, 849-50 (8th Cir. 2001) (officer's conduct including attempting to open plaintiff's car door while plaintiff was stopped at an intersection, bumping into plaintiff at a card shop, shouting out of his car window at plaintiff and shaking his fist while holding a petition that plaintiff was passing out, driving by plaintiff on two occasions on one day while glaring at and taunting plaintiff is not a violation of plaintiff's constitutional rights when the harassing conduct occurred over three years and plaintiff and the officer lived only six or seven blocks apart); Davenport v. City of Corning, Iowa, No. 1:02-cv-30047, 2004 WL 5653224, at *6 (S.D. Iowa Apr. 9, 2004) (frequent police drive-bys viewed as an implied threat or warning is not a constitutional violation); Harris v. City of W. Chicago, Ill., No. 01 C 7527, 2002 WL 31001888, at *3 (N.D. Ill. Sept. 3, 2002) (police "drive-bys . . . and the threat 'watch it - we're going to get you and your family' do not rise to the level of constitutional violation"); Cf. Zitka v. Vill. of Westmont, 743 F.Supp.2d 887, 917-18 (N.D. Ill. Sept. 28, 2010) (a "campaign" of petty harassment including police drive-bys and extra watches may be actionable) (citing Massey v. Johnson, 457 F.3d 711, 720 (7th Cir.2006)). Corman has failed to state a claim against Officer Johnston.

With regard to Officer Kalinnen, Corman simply concludes that he/she failed to investigate Corman's complaints. Corman does not state when or how he reported any of the

incidents to Officer Kalinnen, what the reports entailed, how Officer Kalinnen destroyed evidence of the complaints, or what evidence was destroyed. Corman does not state what police misconduct he reported, other than the one phone call from Officer Johnston, so the court is unable to determine that Corman had any due process right to an investigation. Corman does not state that the failure to investigate alleged police misconduct, other than Officer Johnston's phone call, was related to a separate constitutional violation or Corman's criminal cases.

Finally, assuming Corman had made reports of violations of his constitutional rights, Corman does not state whether Officer Kalinnen is a supervisor and/or whether he/she was responsible for training employees. The alleged failure of one officer to investigate complaints does not demonstrate any official policy or widespread custom of the Grand Forks Police Department's refusal to investigate violations of constitutional rights. Corman has failed to state a claim against Officer Kalinnen in his/her individual or official capacities.

## XI.     Dr. Donald Newberry

Corman alleges Dr. Donald Newberry, a psychologist at the Northeast Human Service Center, based a court-ordered evaluation on false information provided by the state, Newberry knew the information was false, and Newberry presented false information and "false instruments" to the court. (Doc. #17, p. 17). Corman does not state what false information was provided to Newberry or what false information Newberry presented to the court. Corman has failed to state a claim against Dr. Newberry upon which relief can be granted.

## XII.    CPC Rule, Inc., Tim Sinn, Terry DeMars and Orie Oksendahl

A defendant named by Corman as CPC Rule, Inc. ("CPC") provides treatment to sex

offenders at the North Dakota Department of Corrections.[7]  According to Corman, Tim Sinn and

Terry DeMars are employees of CPC.  Assuming that these defendants acted under color of state

law, Corman has failed to state a claim against them upon which relief can be granted.

Additionally, if CPC is a state agency, it could not be subject to liability under § 1983.  See Will,

491 U.S. at 64, 70 (a state and its agencies are not "persons" within the meaning of section

1983).

Corman alleges CPC and its employees forced him to undergo physical testing and

altered the results of the testing, "attempted to coerce" Corman into signing a document stating

he volunteered for testing, forced him into "programming," misreported Corman's history,

statements and actions, falsified reports, and lied to Corman.  (Doc. #17, p. 17-18).  Corman does

not state what the physical testing entailed, how the results were altered, how these defendants

tried to coerce him into signing a document, how he was forced into "programming," how his

reported history, statements and actions were inaccurate, what reports were falsified and how

they were false, or what lies were told to him.

## XIII.   Orie Oksendahl

Corman states that Orie Oksendahl held herself out to be an employee of CPC, and

Corman recently discovered she is a Special Agent for the Minnesota Bureau of Criminal

Apprehension.  (Doc. #31, p. 1).  Corman believes Oksendahl was actually a Special Agent when

he had contact with her.  Id.  Corman alleges Oksendahl tricked or coerced him into signing a

---

[7]  The agency is named the Counseling and Psychotherapy Center, Inc.  CPC provides sex offender treatment in locations throughout the United States, including at the North Dakota Department of Corrections.  See http://www.cpcamerica.com/home.htm; http://www.nd.gov/docr/programs/victims/vicResources.html.

form stating he voluntarily participated in a polygraph test, and he states that Oksendahl threatened to sanction Corman if he did not take the polygraph test in violation of his Fifth Amendment right against self-incrimination. Id.

Corman provides no specific facts surrounding his claim. He does not state how he was tricked or coerced into signing the form, how Oksendahl threatened him, what was said during the polygraph test, or if that information was ever used against Corman. Corman has failed to state a claim upon which relief can be granted against Oksendahl.[8]

## XIV. Lacey Anderson

Corman alleges Lacey Anderson, who is employed at the North Dakota Department of Corrections, created false documents for Corman's file at the correctional facility, and caused unnamed individuals to threaten and sanction Corman for refusing to sign false documents and recant sworn testimony. (Doc. #17, p. 18). These allegations have been discussed above as to other defendants. Corman has not alleged enough operative facts to state a claim upon which relief can be granted.

## XV. Addendum to the Complaint

Corman alleges in an addendum to his complaint that he "has been held in facilities without access to any legal materials or with limited access to inadequate legal materials." (Doc. #17-2, p. 1). To the extent Corman is alleging denial of access to courts, he has failed to state a claim. To sustain a claim of denial of access to the courts, it is not sufficient to merely allege a denial of access to legal materials, even if the denial is systemic. Sabers v. Delano, 100 F.3d 82,

---

[8] Corman does not state he is suing Oksendahl in her individual capacity. A claim for monetary damages against a state official in her official capacity is barred. See Will, 491 U.S. at 64, 71.

84 (8th Cir. 1996). Instead, the prisoner must show the lack of access to materials "hindered [his] efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights." Id. (citing Lewis v. Casey, 518 U.S. 343, 355 (1996)). In other words, the prisoner must plead prejudice or an actual injury. Id.; see also Klinger v. Department of Corrections, 107 F.3d 609, 616-617 (8th Cir. 1997).

Corman attached to his addendum a printout of his profile from the North Dakota Attorney General's Sex Offender Web Site as it appeared on the site on January 13, 2009. (Doc. #17-2, p. 9). The printout shows Corman has two convictions for child molestation in 1987 and 1988 in Grand Forks.[9] Corman states he was not in Grand Forks until 1998. This is likely some of the false information Corman claims was manufactured by the defendants. He states the information from the website was given to the court and caused a "false ruling" in his case. Id. at 3. Additionally, he states the Grand Forks Police Department showed the information to his landlord, causing him to lose his residence.[10] Id.

First, Corman can not challenge his underlying conviction and sentence in a § 1983 action. Habeas corpus provides the exclusive federal remedy for challenges to the fact or duration of confinement. Franklin v. Webb, 653 F.2d 362, 363 (8th Cir. 1981) (citing Preiser v.

---

[9] It appears the website erroneously listed Corman's conviction(s) as having occurred in Grand Forks, North Dakota. The website now reflects that Corman was convicted of the child molestation offense in 1987 in Indianapolis, Indiana, and the second child molestation conviction may have actually been a revocation rather than a conviction. See http://www.sexoffender.nd.gov/OffenderWeb/OffenderDetail.aspx?Id=2797. The North Dakota Sex Offender Web Site contains a disclaimer stating the information may be inaccurate. See http://www.sexoffender.nd.gov/PrivacyStatement/disclaimer.shtml.

[10] The court notes Corman was evicted for renting under false pretenses, unreported pets, and engaging in illegal and criminal activity. (Doc. #17-2, p. 9).

<u>Rodriguez</u>, 411 U.S. 475, 500 (1973)). Second, his claim is frivolous. The information on the North Dakota Sex Offender Web Site is available to the public for its protection. Courts do not rely on the information on the website as evidence of a defendant's criminal history,[11] and the fact is that plaintiff has been declared a sex offender, and the public, including his former landlord, has a right to know that information. Finally, it is doubtful any of the defendants are directly responsible for maintaining the information provided on the website.

The rest of the allegations in Corman's addendum are similar to those in his complaint. They are simply naked assertions without factual enhancement. Corman has not stated a plausible claim which would entitle him to relief.

## XVI. Other Claims

In Corman's first motion for an emergency hearing the court noted he sought some of the relief requested in his complaint. (Doc. #18). Specifically, Corman requested an injunction preventing the defendants from enforcing Corman's sentences imposed after his two criminal convictions, an injunction preventing the defendants from providing allegedly false information to the media, an order granting him counsel, and an order requiring a federal investigation into the defendants' actions. (Doc. #7, p. 3). Additionally, it appeared Corman was requesting this court to intervene in state proceedings seeking civil commitment.

In denying Corman's motion, the court advised Corman that it is inappropriate for this court to interfere in state judicial proceedings. <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

---

[11] At Corman's sentencing hearing, the state district court found Corman had been convicted of one previous molestation. <u>See</u> <u>State v. Corman</u>, 2009 ND 85, ¶ 21, 765 N.W.2d 530, 536. Clearly, the state district court did not rely on the erroneous information on the North Dakota Sex Offender Web Site.

Additionally, the court stated an emergency hearing was not warranted because plaintiff did not allege he was in any actual physical danger.  (Doc. #18).  Thereafter, Corman filed an amended motion for an emergency hearing in which he attempted to state he was in physical danger in an effort to have the court hold an immediate hearing.  (Doc. #19).  Corman's motion was denied, but the court stated it would consider Corman's claims in the amended motion in conjunction with his complaint.  (Doc. #23).

In the amended motion for an emergency hearing Corman states he was receiving psychological inpatient treatment prior to his arrest, and has been denied care since that time. (Doc. #19, p. 4).  Specifically, Corman alleges that while at the Grand Forks County Correctional Center he was "denied access to licensed, qualified health care providers and repeatedly referred to . . . 'Human Resource Counselors,' individuals who are at best licensed 'addictions' counselors . . . ."  Id. at 4-5.  Corman contends his eyesight has deteriorated to the point where he has had to start wearing bifocal lenses.  Id. at 5.  Corman alleges he has headaches and ringing in his ears.  Id.  He states he was given a "nasal medication" to reduce fluid in his ear that was ineffective.  Id.  Plaintiff states he was told his ears are normal and nothing more would be done.  Id.  Corman complains of an injury he had in his right leg in 1980. Id. at 6.  He states the injury along with his age has destroyed his right hip joint.  Id.  Corman contends the defendants' medical staff and a Veterans Administration doctor state his hip needs immediate attention.  Id.  Corman states he is in constant pain and has decreasing mobility which he assumes will not be addressed "due to 'policy.'"  Id.

Prisoners find protection in the Eighth Amendment against prison officials' "deliberate indifference" to their "serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "A

prison official is deliberately indifferent if she 'knows of and disregards' a serious medical need or a substantial risk to an inmate's health or safety." Nelson v. Corr. Med. Services, 583 F.3d 522, 528 (8th Cir. 2009) (quoting Farmer v. Brennen, 511 U.S. 825, 827 (1994)).

A prisoner claiming an Eighth Amendment violation is required to prove both an objective and subjective element. Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004). The defendant's conduct must objectively rise to the level of a constitutional violation by depriving a prisoner of the "minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 342 (1981)). It must also reflect a subjective state of mind evincing deliberate indifference to a prisoner's health or safety. Id. (citing Estelle, 429 U.S. at 104).

A prisoner establishes deliberate indifference by showing the defendant was substantially aware of, but disregarded an excessive risk to her health or safety. Id. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995). Medical malpractice alone is not actionable under the Eighth Amendment. Smith v. Clarke, 458 F.3d 720, 724 (citing Estelle, 429 U.S. at 106).

As a preliminary note, Corman has not alleged that any of the named defendants have directly or indirectly had any involvement with his medical care while incarcerated. However, the court will nonetheless address each of Corman's claims regarding his medical treatment.

Although Corman disagrees with the psychological treatment he received, it does not rise to the level of a constitutional violation. Corman admittedly was treated by counselors. Mere disagreement with treatment decisions does not state a claim that would entitle Corman to relief.

With regard to Corman's eyes, it is apparent Corman was treated for what he describes as "focal difficulties," because he was given bifocal lenses. Deteriorating eyesight is a natural part

of aging.  Corman states he has had headaches due to his "focal difficulties," but he does not allege the headaches went untreated.

Corman also does not allege he was denied treatment for the ringing in his ears.  He states he was given "nasal medication" for fluid in his ears that was ineffective.  A lack of follow-up may have occurred with regard to Corman's ear issues, but he has not stated that any of the named defendants had anything to do with his complaints.  Corman does not state at which facility he had issues with his ears or who was involved with the treatment decisions.  He has not provided enough facts to state a claim.

With regard to Corman's hip, he notes that prison medical staff stated his hip needs attention, indicating they are not disregarding his medical needs.  His assumption that his hip will not be treated due to some sort of "policy" is not enough to state a claim upon which relief can be granted.  Corman must allege some identified person at an identified facility was aware of the issue with Corman's hip, and deliberately disregarded a risk to Corman's health.  Corman has not provided any facts to support his claim.

In Corman's amended motion for an emergency hearing he also complains of false information being released to the media, but he does not identify the content of the false information.  Finally, he complains of the facility's plan to release him from incarceration.  He states he will be released into a city he does not know, with only three hundred dollars, no housing, transportation or employment, and he takes issue with his placement at "charity," which the court can only guess is a homeless shelter or residential reentry facility. (Doc. #19, pp. 6-7).  Corman has no constitutional right to money, transportation, employment or housing upon his release from incarceration.  Corman has failed to state a claim upon which relief can be granted.

**XVII. Motion for a Federal Investigation**

In Corman's motion seeking a federal investigation he states he filed an "Abuse and Neglect of a Minor" report to Social Services about a high school student who was acting as a confidential informant for the Grand Forks Narcotics Task Force and was provided with controlled substances.  (Doc. #6).  Corman states the task force put its drug investigation "above the well-being of the minor . . . ."  Id.  After Corman filed the report he states the defendants began violating his civil rights as described in Corman's complaint and addendum to his complaint.  Id.  Corman requests the court to order federal law enforcement officials to investigate plaintiff's claims.  Id.  Corman failed to state any claim upon which relief can be granted in his complaint and addendum and a federal investigation into his claims is inappropriate and not warranted.  Corman's motion for a federal investigation (Doc. #6) is **DENIED**.

## Conclusion

Corman has failed to state a claim upon which relief can be granted.  In addition, some of his claims are Heck barred, frivolous, or the named defendant is immune from suit.  Ordinarily, the court would allow a plaintiff an opportunity to amend his complaint in an effort to state plausible claims, but in this case the entire lengthy complaint is so lacking in facts, or the claims fail for other reasons, that it would be a waste of judicial resources to prolong this case. Allowing Corman another bite at the apple is not appropriate under the circumstances.  Corman will have an opportunity to object to this Report and Recommendation and Order.  It is **RECOMMENDED** that Corman's complaint (Doc. #17) be **DISMISSED** with prejudice in its entirety.  It is further **RECOMMENDED** the court find that any appeal would be frivolous, could not be taken in good faith, and may not be taken *in forma pauoeris*.

It is **ORDERD** that Corman's motion for a federal investigation (Doc. #6) is **DENIED**.

Dated this 21st day of November, 2012.

/s/    *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge

### Notice of Right to Object

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation and Order by filing with the Clerk of Court no later than **December 7, 2012**, a pleading specifically identifying those portions of the Report and Recommendation and Order to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.